UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUZANNE RIHA ex rel. I.C.,

    Plaintiff,

v.                              Case No. 8:17-cv-787-T-33AAS

POLK COUNTY SCHOOL DISTRICT,
et al.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant the School Board of Polk County's Motion to Dismiss (Doc. # 43), filed on June 16, 2017, and Defendant Our Children's Academy, Inc.'s Motion to Dismiss (Doc. # 47), filed on June 28, 2017. Plaintiff I.C., who is identified only by his initials because he is a minor, timely filed his response in opposition to the School Board's Motion on June 30, 2017, and untimely filed his response in opposition to Our Children's Academy's Motion on July 13, 2017. (Doc. ## 48, 49). For the reasons below, the Amended Complaint is dismissed.

**I.  Background**

I.C. is a child diagnosed as "being on the autism spectrum and having associated behavioral and emotional

disabilities" who attends Our Children's Academy. (Doc. # 37 at ¶¶ 3, 6). Our Children's Academy is a charter school in Polk County, which is regulated by the School Board. (Id. at ¶¶ 14, 15).

The school bus that transported I.C. to and from Our Children's Academy transported children with special needs and, as such, had a bus attendant in addition to a driver. (Id. at ¶ 24). This school bus also had a video surveillance system and an electronic monitoring system. (Id. at ¶¶ 24, 25). The electronic monitoring system, however, "could be easily deactivated" by someone on the bus, including the child passengers. (Id. at ¶ 25).

On March 2, 2016, I.C.'s mother placed I.C. on the school bus to be taken to Our Children's Academy. (Id. at ¶ 28). During the bus ride, I.C. fell asleep in his seat. (Id. at ¶ 29). After the other children departed the bus, the bus driver and attendant did not check each seat on the bus to ensure all of the children had departed. (Id. at ¶ 30). Additionally, the electronic monitoring system had been deactivated at some point so it did not alert the driver or attendant to I.C.'s presence on the bus. (Id. at ¶ 27).

From Our Children's Academy, the driver, with the attendant onboard, drove the bus to a storage facility. (Id.

2

at ¶ 31). Once at the storage facility, the driver and attendant got off the bus. (Id. at ¶ 32). A "video recording . . . clearly shows the Bus Attendant walking right past I.C.'s seat prior to exiting the bus and leaving I.C. onboard the locked bus" and also shows "that the Bus Driver did not walk the bus . . . to ensure all of the children had in fact disembarked . . . before leaving the bus locked and in storage for the day." (Id. at ¶¶ 33, 34).

I.C. awoke sometime thereafter "disoriented and afraid." (Id. at ¶ 37). Eventually, he climbed out of the bus's emergency window and, after "plummeting to the ground," walked and hitchhiked approximately 30 miles to his house. (Id. at ¶¶ 37, 38). Our Children's Academy did not report I.C.'s absence on March 2, 2016, to his mother. (Id. at ¶ 36). The next day, March 3, 2016, I.C. told the bus driver he had been locked in the bus and walked home from the storage facility. (Id. at ¶ 39).

On March 9, 2016, a similar series of events occurred. (Id. at ¶ 43). I.C. boarded the same bus driven by the same driver and attended by the same attendant. (Id.). Again, I.C. fell asleep and failed to disembark at Our Children's Academy. (Id. at ¶¶ 44, 45). The driver and attendant did not "properly check the bus for students remaining in their seats" and the

3

electronic monitoring system had been deactivated at some point. (Id. at ¶¶ 45, 46).

As with the first incident, the driver, with the attendant onboard, drove the bus from Our Children's Academy to the storage facility and upon arrival departed the bus, leaving I.C. behind in the locked bus. (Id. at ¶ 47). I.C. woke up while the bus was in the storage facility, somehow got out of the bus, and then "accepted rides from strangers on the side of the road to get back to his home." (Id. at ¶ 48). Our Children's Academy did not inform I.C.'s mother of his absence on March 9, 2016. (Id. at ¶ 50).

I.C.'s mother learned of these incidents after I.C.'s therapist called her on March 9, 2016, to ask if he was okay. (Id. at ¶ 51). A little over a year later, on April 3, 2017, I.C., through his mother, brought suit against the School Board and Our Children's Academy. (Doc. # 1). After the School Board moved to dismiss the Complaint, I.C. filed a proposed order dismissing the Complaint with leave to amend, which the Court construed as I.C.'s motion for leave to amend. (Doc. ## 22, 28, 30). The Court granted leave to amend. (Doc. # 30).

I.C. filed his Amended Complaint on May 31, 2017. (Doc. # 37). The Amended Complaint brings the following claims: negligence against the School Board (Count I); negligent

infliction of emotional distress against the School Board (Count II); intentional infliction of emotional distress against the School Board (Count III); negligence against Our Children's Academy (Count IV); negligent infliction of emotional distress against Our Children's Academy (Count V); intentional infliction of emotional distress against Our Children's Academy (Count VI); false imprisonment against the School Board (Count VII); and violation of "I.C.'s constitutional right to due process, right to remain free from confinement under the Fifth and Fourteenth Amendments . . . right to adequately safe travel and timely access to education and educational and therapeutic opportunities via transportation provided at an acceptable level of accessibility, service, quality, and safety" (Count VIII).[1] Defendants now move to dismiss the Amended Complaint.

## II. Legal Standard

On a Rule 12(b)(6) motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

---

[1] Although the Amended Complaint lists the § 1983 cause of action as Count VII, that is a scrivener's error. So, to avoid confusion, the Court refers to the § 1983 cause of action as Count VIII.

Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the Complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

### III. **Analysis**

Count VIII is the sole federal cause of action and thus is the only count providing original jurisdiction to this Court. <u>See</u> 28 U.S.C. § 1331. The Court's jurisdiction over the other seven counts, which are all state-law claims, is

premised on 28 U.S.C. § 1343. (Doc. # 1 at ¶ 11). Because the Eleventh Circuit has "repeatedly said that[] when all of the federal claims have been dismissed pretrial, Supreme Court case law 'strongly encourages or even requires dismissal of the state claims,'" Estate of Owens v. GEO Grp., Inc., 660 Fed. Appx. 763, 775 (11th Cir. 2016) (citation omitted), the Court only addresses the federal claim.

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Rather, to recover damages from a local governmental entity under § 1983, a plaintiff must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted).

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a particular policy or custom that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 403.

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting

> on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.

Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999) (citation omitted); see also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001).

"In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" McDowell, 392 at 1290 (citation omitted). "[T]he practice must be extensive enough to allow actual or constructive knowledge of such customs or policies to be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy." Daniel v. Hancock Cty. Sch. Dist., 626 Fed. Appx. 825, 832 (11th Cir. 2015) (internal quotation marks and citations omitted). The plaintiff must additionally show the policy or custom was the moving force that caused the constitutional violation. McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999); Young v. City of Augusta, 59 F.3d 1160, 1171 (11th Cir. 1995).

An inadequate training program can also be the basis for § 1983 liability when the municipality adhered to an approach that failed to prevent tortious conduct by employees. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407. "A pattern of

tortious conduct by employees can show that the lack of proper training constituted the 'moving force' behind the plaintiff's alleged injury." Miller v. City of Tampa, No. 8:10-cv-487-T-33EAJ, 2011 WL 2631974, at *2 (M.D. Fla. July 5, 2011) (citing Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 407–408; Lewis v. City of W. Palm Beach, 561 F.3d 1288 (11th Cir. 2009)). "When a plaintiff alleges that a municipality has failed to train . . . its employees, this showing usually requires 'some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" Martin v. City of Macon, No. 16-16103, 2017 WL 2859512, at *2 (11th Cir. July 5, 2017) (citation omitted).

Although the Amended Complaint contains conclusory allegations that the School Board failed to adequately train the bus driver and bus attendant (Doc. # 1 at ¶¶ 45, 53, 56) and that the School Board had certain persistent and widespread customs (Id. at ¶¶ 21, 26, 45, 56), the Court is not bound to accept those allegations. Iqbal, 556 U.S. at 678; Papasan, 478 U.S. at 286. As they stand, the well-pled allegations show only — albeit unfortunately — that one bus driver and one bus attendant failed to notice one child was left on the bus on two different days. But, there are no

9

allegations anyone other than the three people involved in these two incidents (I.C., the driver, and the attendant) experienced a similar event. For example, there are no allegations that the driver left another child in a locked bus or that any other driver left any child in a locked bus. Furthermore, there are no allegations the School Board knew of and deliberately disregarded a pattern of children with special needs being left on buses.

A similar lack of pervasiveness holds true with respect to the § 1983 claim against Our Children's Academy. At most, the well-pled allegations show only that Our Children's Academy failed to report two instances of I.C.'s absence. There are no allegations, however, that Our Children's Academy knew I.C. was on the bus but allowed it to leave. Nor are there any allegations that Our Children's Academy failed to report to parents similar instances of children with special needs being left behind on buses. Moreover, there are no allegations that Our Children's Academy knew of and deliberately ignored a pattern of children with special needs being left on buses.

In sum, the Amended Complaint does not contain facts that plausibly give rise to a claim to relief: § 1983 requires more than mere negligence, Daniels v. Williams, 474 U.S. 327,

10

333-34 (1986). In an abundance of fairness, however, rather than dismissing the § 1983 claim with prejudice outright, the Court will grant I.C. an opportunity to amend.

If I.C. files a second amended complaint, he should separate out different § 1983 claims into separate counts. For example, paragraph 114 of the Amended Complaint appears to attempt to assert a false imprisonment claim and one, or possibly two, substantive due-process claims. (Doc. # 37 at ¶ 114). Each distinct constitutional violation alleged should be asserted in its own count and specify the Defendant against which it is brought.

And, with respect to the false imprisonment claim in particular, "[a] § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009). There are three elements to a common-law false imprisonment claim: "an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." Id. The Amended Complaint does not allege facts showing any Defendant intended to confine I.C.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The School Board of Polk County's Motion to Dismiss (Doc. # 43) and Our Children's Academy, Inc.'s Motion to Dismiss (Doc. # 47) are **GRANTED**.

(2) The Amended Complaint (Doc. # 37) is **DISMISSED WITHOUT PREJUDICE** and I.C. is granted leave to amend.

(3) I.C. may file a second amended complaint by August 3, 2017. If I.C. elects to file a second amended complaint, he may not add new causes of action; rather, he should focus on Count VIII's deficiencies as addressed herein. Absent a viable federal cause of action, the Court will be disinclined to exercise jurisdiction over the state-law claims.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of July, 2017.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE